Our final case this morning is No. 22-2055, Hydra, Inc. v. Veeam Software Corporation. Okay, Mr. Ostra. Good morning. May it please the Court. Your Honor, we sent a letter to the clerk at the direction of the clerk's office last week to clarify the stance on the claims in these appeals. As Your Honors may be, I'm sure you are aware, and certainly Your Honor, Judge Clevenger may remember as having been on the panel, there were two previous appeals of related patents. This one got delayed because of a re-hearing, but now, so... They were reaffirmed in 1443 and 1444. And looking at the IPR decisions there, they seem to address the same issues as to inventory and motivation to combine that's involved here and are preclusive on those issues. So what's left of the claims, and why is anything left? There is one argument left with respect to the claims that we called out for retention on appeal, which is independent claims 30 and 35 and some dependents off of those or other dependents which have the same limitations. All of those claims are specific to a restore operation. None of the claims in the earlier patents we're claiming restoring had anything to do with only the backup portion of the system. These claims are specifically on restore. So which part of your blue brief is focused on this restore feature that you want us to now focus on for purposes of what you believe remains in your appeal? The issue, of course, is there was a procedural issue that the court's ruling on the prior appeals came after we filed our brief. But, in fact, on page 49 of our brief, we specifically make an argument that field, which is the reference that was being used with respect to the restore claims. So we specifically address independent claims 30 and 35 on page 49 of our opening brief. And we include the fact that the field does not disclose the use of a backup inventory for a restore process. And that field teaches away from using and transmitting signatures from a backup data storage medium to a remote storage medium. But that teaching away argument was addressed in the earlier IPR and necessarily rejected when we affirmed. I'm sorry. If you look at, for example, at page 872 in the earlier case, which sets forth the IPR decision, it addresses the teaching away argument. And so we necessarily rejected that in affirming. Okay. The one limited additional argument that was not previously addressed and was not actually addressed by the board in the final written decisions in this case, has to do with field not teaching using. And we're going to focus on using signatures during a restore process. There was no restore process in the prior two appeals. That was the backup portion right there. And so we acknowledge that field does teach a file-by-file use of a signature to help decide whether to backup a file. But field does not describe or disclose, and this was never argued in the previous, because there were no claims on restore. Field does not disclose using a descriptor or signature, those are the terms from the claims, for purposes of restore. And in fact, the board never actually addressed this argument. So in the final written decision, if I could jump to that, having to do with this set of claims specifically, or claim 30, which is representative of this set. The board cites the fact that we're arguing that field does not disclose and teaches away. This is 30 of the 043? Yes. Yes, Your Honor. So on page 199 of the appendix, which is one of the pages in the final written decision. Which page? 199 of the appendix. I don't have the native page of the final written decision. Yes, I see 199. Okay. There's a discussion, this is the board's analysis of this issue. In the middle of the page, there's a paragraph that says, as mentioned, Patent owner contends that field does not teach the use of a backup inventory for a restore. To support this contention, patent owner argues that field teaches away from using and transmitting signatures from a backup storage medium. I'm obviously paraphrasing, I see Your Honors are looking at the page. During a restore process. During a restore process, correct. Then the board says claim 30, however, does not require transmitting signatures. So the board addressed half of that argument. The portion that has to do with transmitting. The board never addressed the fact that we also were arguing that field does not disclose using signatures. This has nothing to do with the definition of backup inventory. Even under the board's construction, which this court has affirmed, that backup inventory just means an itemized list of data. Even under that construction, we were still arguing that field does not disclose use. The use of a descriptor or signature during a restore. That was not something that was decided in the prior appeals because there were no claims on restore. Only this patent has claims. Can you use without transmitting? Correct. There are two arguments.  What's the difference between using and transmitting? The claim itself talks about using descriptors to decide which files to be restored. It checks its descriptors. That would be during a restore process. During a restore process. That is the subject of these claims only. Can I ask one question? In your letter that you sent us in which you waved off a lot of the issues that are in the appeal on the basis of the previous thing, I think you say that you want to maintain the appeal as to claims 11, 13, 20, 22. I think that's wrong. Because as you pointed out in your blue brief, your only argument is with respect to 30 and 35. We went back and looked and we didn't see any argument you made in your brief as to this argument that you're now making that it related to claims 11, 13, 22, 24. I just want to be clear that you're only trying to preserve this argument as to claims 30 and 35? Yes. You're correct, Your Honor. Thank you. We included those claims because they're essentially identical in subject matter. I'm going to strike them out, okay? Okay. But 30 and 35 are the independent ones and then the remaining ones that are in that set depend on Well, 30, 32, 37, 39, etc. So all of those are dependent off of 30 and 35. So what we're asking the court, and again, this could not have been briefed in this document because we didn't have this court's ruling until the day before we filed this. Wait, wait, wait, wait. That's not true. You could have briefed this issue even if some other parts of your brief became irrelevant once we affirmed. I mean, you're obligated to address this issue in your opening brief, and if you didn't, you had a waiver or a forfeiture problem. Well, we did address the issue. I just pointed out to Your Honors on page 49 of our brief where we did argue, and the board acknowledged we argued it. That's a pretty skinny presentation of an argument, page 49. I didn't see this point raised anyplace else in your brief. I mean, just to be frank, we're now limited to your direct appeal is related to 30, 35, and the dependent claims on page 49. That's what I'm citing to you today, Your Honor. I have to go back. For what it's worth, yeah. Well, I'm grateful for your candor with your letter pointing out to us the parts of the appeal that it would have been a waste of your time and ours for talk about it. So did you argue this point in your yellow brief, in your reply brief? Not specifically. We did not argue it specifically. So you're asking us based on a single sentence in the opening brief to say that the argument was preserved. And the board's written decision, which was prior to our brief, which showed that we argued it to the board in detail. The board did not consider this issue. But in terms of you raising the issue before us, you didn't address it in the yellow brief, and your argument was based on a single sentence in the blue brief. I believe we did at least reiterate the arguments as to the claims 30 and 35 in the yellow brief. Right. But just in all fairness, the argument you're making now is that there's a radical difference between using and transmitting in this context, and the board slipped it up when they combined the two. And for us to sort of tease that out of page 49 is a reach. Right? I don't agree. I understand your point. I'm trying to get a hold of it. It's over there. At this point, all I would be asking on this for the relief is to send this back to the board, can actually consider whether FIELD discloses using signatures. During using. During restoration. Only. Just that one narrow issue. The board should take another look. I'm not asking this. What's the key claim language in claim 30? Claim 30. If I had to pick key language, it would be the third element. Okay. The retrieving selected electronic. I'm sorry. Retrieving selected electronic data from the. Backup data storage. Having a descriptor that matches descriptors in the list of descriptors associated with the remote. So that's how it's using the descriptors. Finds matching ones to use as part of the restore. FIELD doesn't disclose that. Okay. Unless my colleagues have further questions, you want to save the rest of your time? Yes, I would like to. Thank you. Okay. Mr. Pappas. Morning, Your Honor. May it please the court. I'd like to spend most of my time talking about the cross appeal, but I would like to address the argument that my colleague just brought up. He pointed to this one argument, and I agree. If there's anything left, this would be the only argument remaining. We don't think it is still a valid argument. And as Your Honor's pointed out, we didn't see where they carried this through to their yellow brief. We did address this in the red brief. Where in the red brief did you talk about this? Page 49 of the red brief. We have addressed the general argument. And this is section D directed to claims 30 and 35 about teaches away from using and transmitting signatures. On the restore process. I'm sorry, Your Honor. Yeah, on the restore process. Yes. What about the distinction between using and transmitting? Yes, Your Honor. So the board where my colleague pointed at Appendix 199, they do address it in the sense that they say, Patent Owner argues that field teaches away from using and transmitting signatures. And then they disregard that saying it doesn't require transmitting signatures from the backup storage medium. So I think they did consider this as a requirement. But I think even more importantly, this isn't a requirement of the claims. This is not a requirement of the claims. What do you mean by this? Using and transmitting the descriptors as part of the restore process. So the retrieving limitation of retrieving selected electronic media from the backup data storage medium, having a descriptor that matches descriptors in the list of descriptors associated with the remote storage medium. I guess when it says having a descriptor, you're thinking that just means that's an observational detail of the electronic data being retrieved. It's not requiring that there be an active step of comparing said descriptor to a list of descriptors? Yes, Your Honor. For the restore, that is accurate. It has to have that descriptor, and it does because in both the prior and the patent, when you back up a file, you send that descriptor or that signature. And then that's stored on the backup server or generated on the backup server. And so there is a link between the file and the descriptor. But the claim itself doesn't actually require that you use it as part of the restore process. You can, but it's not a requirement of the claims if you were to address this on the merits. But I think more importantly, I don't think this argument was even carried through. It wasn't explained. As I recall from the patent owner response, it wasn't explained in any more detail than this. And it does hinge on a teaching away argument. And the Board addressed the teaching away argument in multiple places because that was used a lot throughout the briefs. That field just discloses these alternative ways of doing things in one particular way and doesn't discourage or criticize any particular way for doing the backup or restore. But I think if you do get on the merits, you'll see that these claims don't actually have a requirement to use, at least as I understand, HYBRD be raising that argument. And again, I'm not. Does the field use a descriptor when it tries to restore files? It uses the descriptor in terms of generating one on the backup server. And it's used primarily for backup purposes. But what the Board found is that the backup inventory and field comprised not only the descriptors, but also other information that's stored in the backup database, like permissions of files, the file path of files, and ways to restore it. So the field is not explicit about whether it actually needs to use the descriptor for retrieval purposes. But again, the claim doesn't require that. My turn to the cross-appeal. Yes, Your Honor. The issues on cross-appeal concern two distinct sets of claims. There's Claims 3 and 16, and then there's Claims 7 and 20. I'd like to start with Claims 7 and 20, which essentially recite that access to electronic data stored in the backup data storage medium, such as a file, is restricted to devices that first provide a descriptor associated with that electronic data. There's no dispute about how field operates. In field system, the descriptor is provided when a computing device attempts to backup a file. A signature is generated, and then it's sent over to the backup server. The board's decision was largely premised on a finding that field system allows users to access files in its backup database that the user never had to begin with, that the user never attempted to backup. Not only is that finding lacking substantial evidence, but there's no evidence whatsoever to support that finding. The first point I want to make on that is that the entire purpose of field's backup system is to allow users to restore files that they originally backed up. It's nothing more. That is the only access mechanism that field discloses. At Appendix 523, for example, field explains that the present invention is directed to a system for efficiently performing a backup of data in a networking environment. Then the data in the database may be recalled at a later time and restored onto the computing device. That's the definition of restoring. The problem that I see, okay, is that the board's original decision here, to me, is somewhat confusing. But if you look to the decision on rehearing, they're basically saying that your expert witness said that the prior art allows retrieval by other authorized persons and not the individual who first stored it. And that that's not sufficient to disclose that limitation. And I'm wondering why that's wrong. Your Honor, are you referring to Hiber's expert, Dr. Wiseman? I think they relied on it at Appendix 144 and 145. Okay.  Their expert. Yes, Your Honor. And so they credited that testimony and said that it allows you to allow someone who didn't store the data initially to retrieve it as long as that person is authorized. But that is something that doesn't disclose the claim limitation. Yes, Your Honor. So I'm glad you pointed it out. That is the exact testimony that the board relied on as a basis for its decision. And if you look at that testimony, which is repeated on Appendix 144, you'll see that there is not a single citation to the record. There's not a single citation to Field. There's not a single citation to any supporting evidence. This is conclusory testimony, and it's inconsistent with Field's disclosure. The board was not entitled to rely on that as a reason that Field provides some other form of access under this court's own precedent. That conclusory testimony can't provide substantial evidence. And if you look closely at Field, because on Appendix 145, the board attempts to sort of fill in the gaps of Hiber's expert's testimony and say, well, this testimony is supported by Field's disclosure. If you look at those four paragraphs that they cite, which are paragraphs 8, 10, 24, and 40 of Field, there's nothing in those paragraphs about allowing access to files outside of the normal backup and restore process. I guess in the end, though, the burden of proof here is on your side to try to establish that Field necessarily teaches this feature of restricting access to people with special description. Yes, Your Honor. I suppose one reading of Field could be your reading, but because Field doesn't talk in the terms that are actually decided in this claim about limiting, restricting access just based on the descriptor alone, it makes it hard to say that the board was somehow unreasonable in its alternative reading of the overall Field preference. Sure. So I think if you get to this, if I understand Your Honor's question, if you get to this point- Substantial evidence standard review problem that you're running up against. I think it is, Your Honor, for the other forms of access in Field. Certainly, that's a substantial evidence issue that's not supported. If you were to agree with Veeam on that issue and where we're left is that all Field discloses is this backup and restore where that operation meets the language of the claims and it doesn't allow any other form of access, then I think we get to a legal question because all of the factual inquiries then would have been made. And so I don't think it's substantial evidence to flip that. It's a legal question of is that sufficient to establish obviousness. And I think some of the cases that we cited, AC Techs, for example, talk about how a reference doesn't need to state a feature's absence in order to disclose a negative limitation. And that's one way to frame this as a negative limitation in terms of this restriction of access is not allowing other forms of access. And I think in this case- Where a reference discloses only retrieving by people who stored in the first place, right? That's right. And the question is whether the board's finding the contrary, which is the basis in the rehearing decision, is supported by substantial evidence. They rely on patentees expert. You say that's too conclusory, but you didn't yourself put in an expert who said the opposite, right? We did. We did, Your Honor. You did? Where is that? And so I can point you to a couple places. In Dr. Shinoy, who is BEAM's expert, his declaration is Appendix 475 to 476. That was his original declaration. And there he talks about field teaches that a user can only restore, i.e., access a file that was previously backed up by the user. And he says this is consistent with the general concept of backup in which a user is limited to restoring files that the user backed up rather than allowing users to inappropriately access different files of other users. And I think that logic makes sense, not just from a technical perspective, but you don't want to have a backup system in which your data can just be accessed by any other user. That wouldn't make sense in field. And if you look at field as written, the only thing it discloses is backup and restore as you would expect it. Okay, but what am I to make of paragraph 157 on page 474 where he uses the language whether or not the user originally transmitted a file for storage? Oh, so to clarify, yes. To clarify that, that's not referring to whether or not they attempted to backup. That's referring to whether the user actually had to transmit the file. Because just like the patent, the purpose in field is when you attempt to backup, you send a signature of the file. If the backup server says we don't have that file yet, then you would transmit the file. So that's what that's referring to is the user would still be attempting to backup the file whether or not they actually have to transmit it to storage. And that's because the file may or may not already be in storage. So that's that deduplication. So that's a different point, and I think unrelated to this, but hopefully that clarifies that issue. And so where we're left on this issue is if the boards, I'm sorry, if... But where does your expert clearly state that the prior art is limited to retrieval by people who originally stored the file? That would be, I think, one place is Appendix 475 in that paragraph 159 where it says, Field teaches that a user can only restore a file that was previously backed up by the user. And then later in BEAM's expert's reply declaration, which is at Appendix 1064 to 1065, he talks about Hiver's contentions that any user could restore any file is illogical in view of Field's disclosure, and that the entire purpose of the restoration is to restore files back onto a computing device with the same path, name, and permissions that were associated with it. And that's what Field really talks about is only restoring the files back onto a computing device. And so if you take Field as written and you don't try to read anything into it in terms of what modifications could you make, unmodified, Field actually has this restriction. So I'm happy to answer any questions on that, otherwise I can move to Claims 3 and 16. So Claims 3 and 16 recite removing the electronic data associated with the first descriptor from a list of electronic data that is to be transmitted to the backup data storage medium. And that first descriptor is referring back to Claim 1 that matched a descriptor that's already present on the backup server. So the board erred here by construing the scope of the removing limitation too narrowly. In the context of the 043 patent, the removing limitation encompasses determining that the electronic data does not need to be transmitted and preventing that data from being transmitted. There's nothing more that is required. And if you look at this in the context of the specification, it makes sense. It may not be what you would normally think of as removing, where you might think of it as a delete operation executed on a list. In the case of the 043 patent, the only relevant disclosure is at Appendix 275, Column 13, starting around Line 23. And that's Figure 6 of the patent. And it talks about making this determination based on the descriptors that a file is already stored and then determines not to transmit that file. By definition, when it makes that determination and acts not to transmit the file, that file is no longer part of the list of electronic data to be transmitted. I don't recall, was there a claim construction about the term list, list of electronic data? There was no explicit claim construction. Nobody asked for a claim construction. Nobody asked for it, at least styled under the heading of claim construction. But this understanding interpretation was proposed in the petition, and it was clarified in the board's decision that this actually is a claim construction issue. And I see I'm over my time. I'm happy to answer questions about this, but otherwise I can cede the rest of my time for rebuttal. Well, you don't have any time, but we'll give you a minute for rebuttal. Okay, I appreciate it. Mr. Ostrom. Before I move on to the cross-appeal, just a last word. The brief, including our civil reply, is peppered with discussions of this issue. But I will admit, Your Honor, Judge Clevenger was correct that we are relying on that page from the appeal brief about the argument about no use of descriptors for restore. So I could find other references about the importance of using descriptors for restore, but we're going to rely on that page in the appeal brief. So I just want to clarify that, Your Honor. Just to discuss the issues, unless Your Honor has any questions, I'll discuss the issues on the cross-appeal now. Go ahead. Okay. The board was well within its rights to evaluate the evidence available, including the two experts, and make a decision. That's what the board is supposed to do. So you agree the two experts were in conflict on this? As they often are, yes, Your Honor. Okay. Our expert did put in, based on his expertise, his support is his expertise, that's one of the ordinary skill in the art, would have an understanding that when you're dealing with operating system files and applications, it may very well be that the users who get it restored never sent those files in the first place. So FIELD is a Microsoft patent, and it's discussing the fact that everyone has the same operating system files. It's inefficient to store those, like 10 copies of those operating system files. Everyone's going to get them back if their system crashes anyway. So it is perfectly valid for our expert to say, in his opinion, as an expert, that FIELD does not necessarily require that descriptors be sent in order to get a file back. And the board was well within its rights to countenance that evidence. It's certainly there's substantial evidence to support their opinion, and I believe the other side has satisfied their burden to show there wasn't. The other thing about that issue is they presented this argument about this restricting access being a negative limitation. This is an argument that I believe first appeared in their SIR reply, so I haven't really had a chance to address it. It's not a negative limitation. Negative limitation is, say, don't use X. Restricting access, and the board found this specifically in both the original decision and the rehearing decision, is an affirmative obligation, this affirmative step of restricting access. It's like locking the door, like an action that is taken to block access. That's what the current claim requires, not merely that we don't do it otherwise. So it's not a negative limitation. None of that law applies. Now, moving on to, unless there's questions about Claim 7, moving on to Claim 3 issue. Our counsel said that Claim 3 doesn't require anything other than not sending the data, but that's not true. Claim 3 does require, it explicitly says that the data is removed from the list of electronic data that is to be transmitted. The board found, based on, after considering all of Petitioner's, Veeam's arguments and evidence in detail and analyzing it page after page in both of its decisions, that this claim requires that there has to be a list. It could be a new list, it could be a new version of the list, but there's a list of data that is to be transmitted, that merely not sending the file because it was already there is, it doesn't meet the limitation of required in Claim 3 that there be a list of things to be transmitted, which is different than the original list because something was removed or not copied over or however that was done exactly. So unless there are any further questions about any of those issues, I have nothing further on those. Okay, thank you. Mr. Pappas, you have a minute. Thank you, Your Honors. Just two quick points to make. My colleague said that the expert was entitled to say that a user would have reason to access operating systems outside of a restore, but there's no basis for that. It's still a backup and restore system. And so the purpose of having one operating system instead of 10 on the database is just for storage purposes. You still wouldn't need it unless you were restoring it back. And Field says nothing, and there's no reason why you would want to access it outside of that. It's not a data distribution system. This is a backup and restore system. The second point is my colleague was talking about some sort of proactive step to restrict access. And the claim says wherein access is restricted. It doesn't say any particular form of restriction. It just says access has to be restricted. And Field, as I mentioned, as written, access is restricted because that's the only form of access. If there's nothing else, I thank you for your time. Okay. I thank both counsel. The case is submitted. That concludes our session for this morning.